IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHELLE LORD,

    Plaintiff,

v.

AMERCAN GENERAL LIFE INSURANCE COMPANY OF DELEWARE,

    Defendant.

CIVIL ACTION NO.: 4:17-cv-167

## **O R D E R**

Presently before the Court are Defendant American General Life Insurance Company of Delaware's Motion for Summary Judgment, (doc. 17), and Plaintiff's Amended First Motion for Leave to File Amended Complaint and Amended Response to Summary Judgment, (doc. 31). In this ERISA action, Plaintiff contests Defendant's decision to deny her continued long-term disability benefits and urges the Court to award her all unpaid benefits due under the subject policy. (Doc. 1-1.) Defendant seeks summary judgment, arguing that the medical evidence of record supports its denial decision. (Doc. 17.) Plaintiff filed a Response in opposition to summary judgment, (doc. 22), to which Defendant filed a Reply, (doc. 26). In addition, Defendant filed a Response opposing Plaintiff's request for leave to amend as futile. (Doc. 30.) 4For the reasons which follow, the Court **GRANTS** Defendant's Motion for Summary Judgment, (doc. 17), and **DENIES** Plaintiff's Motion for Leave to Amend, (doc. 31).[1] The Court **DIRECTS** the Clerk of Court to enter summary judgment in favor of Defendant and to **CLOSE** this case.

---

[1] For this reason, the Court also **DENIES** Plaintiff's First Motion for Leave to File Amended Complaint and Amended Response to Summary Judgment. (Doc. 28.)

## BACKGROUND

Plaintiff Michelle Lord originally filed this ERISA action in the State Court of Chatham County. (Doc. 1-1.) On September 7, 2017, Defendant American General Life Insurance Company of Delaware ("American General" or "Defendant") removed the case to this Court. (Doc. 1.) Discovery closed on January 25, 2018, (doc. 9), and the present motions followed.

Plaintiff's challenge to Defendant's denial of continued long-term disability benefits arises under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, commonly known as ERISA.[2] (See Doc. 1.) At the time of her disability claim, Plaintiff was employed as a Protective Services Officer for the Georgia Ports Authority, which provided its employees disability insurance benefits issued under an American General Group Long-Term Disability Policy (the "Policy"). (Doc. 17-1, p. 1; doc. 22-1, p. 2.) The long-term disability ("LTD") insurance coverage was offered under an employee welfare benefit plan sponsored by the Georgia Ports Authority and subject to ERISA. (A.R. 1046–47, 1071.)[3] Defendant, which issued the Policy to the Ports Authority, also served as its claims administrator. (Id.)

---

[2] In her Complaint, Plaintiff does not expressly bring any claims under ERISA and instead sets forth state-law claims for breach of insurance contract and bad faith refusal to pay. (See Doc. 1-1.) However, through 29 U.S.C. § 1444(a), Congress mandated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." In the context of challenging an insurance claim decision, Congress intended ERISA's civil remedies, provided by 29 U.S.C. § 1132(a), "to be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." Alexandra H. v. Oxford Health Ins. Inc., 833 F.3d 1299, 1317 (11th Cir. 2016) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987)). Thus, ERISA preempts Plaintiff's state-law causes of action as they concern improper claim processing. Moreover, despite not explicitly alleging an ERISA claim in her Complaint, Plaintiff does not contest that it controls her challenge to Defendant's denial of long-term disability benefits. (See Doc. 22.)

[3] The pertinent record documents in this case were manually filed under seal due to the sensitive personal and medical information contained therein. (Docs. 14, 15, 19.) For the purposes of this Order, the Court references and cites to the Administrative Record ("A.R.") where necessary. Unless otherwise noted, the relevant facts are undisputed.

**I.    The Policy**

The Policy provides LTD benefits for a "disability," as defined by the terms of the Policy, after a 180-day elimination period.[4]  (Doc. 17-1, p. 1; doc. 22-1, p. 2.)  In determining who is eligible for LTD benefits, the Policy grants Defendant "the sole discretionary authority to determine eligibility, make all factual determinations[,] and to construe all terms of the group policy."  (A.R. 1071.)  Under the Policy, LTD benefits are payable for thirty-six months upon approval; however, such benefits are discontinued after the thirty-six-month period if the insured is capable of "work in any *gainful occupation* on a *part-time basis*."  (A.R. 1063 (emphasis in original); see also doc. 17, p. 3.)  In pertinent part, the Policy sets forth a "disability" test for continued LTD benefits as follows:[5]

> If you are disabled during the *elimination period* and the next 36 months, you will continue to receive payments beyond 36 months of disability, if you are also:
>
> - working in any occupation and continue to have a 20% or more loss in your *indexed monthly earnings* due to your *sickness* or *injury*; or
>
> - not working, and due to the same *sickness* or *injury*, are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training, or experience.

(A.R. 1052 (emphasis in original); see also doc. 26, p. 2.)

A "gainful occupation" is one "that is, or can be, expected to provide you with an income equal to 80% of your indexed monthly earnings within 12 months of your return to work." (A.R. 1053 (emphasis omitted); see also doc. 17, p. 4 n.4.)  Thus, LTD benefits cease when, *inter alia*, American General concludes that the insured is able to work part-time in any gainful

---

[4]  "Elimination Period means a period of continuous *disability* that must be satisfied before you are eligible to receive benefits from [American General]."  (A.R. 1053 (emphasis in original).)

[5]  To be granted initial disability benefits—a finding not at issue here—the insured must be unable to perform all material and substantial duties of her regular occupation due to sickness or injury and must have lost 20% or more of her indexed monthly earnings due to the same sickness or injury.  (A.R. 1052.)

occupation, following 36 months of disability payments, and the insured chooses not to. (See A.R. 1063, 1071; see also doc. 17, pp. 3–7.)

**II.       Plaintiff Michelle Lord's LTD Claim and Appeal**

Plaintiff's LTD claim stems from two injuries she suffered in connection with her job as a Protective Services Officer—a right elbow injury from an October 2009 motor vehicle accident at the Ports Authority and a left knee injury from a January 2011 fall during law enforcement training. (Doc. 22, p. 1.) Plaintiff began treatment with Dr. Robert Dow Hoffman on March 7, 2011, but approximately four-and-half months later, on June 22, 2011, she stopped working at the Ports Authority due to her knee problems. (A.R. 82–84.) In March 2012, Plaintiff filed a claim for LTD benefits based on osteoarthrosis in her lower leg and medial epicondylitis in her elbow, as diagnosed by Dr. Hoffman. (Doc. 17, p. 2.)

In connection with the claim, Defendant American General requested medical records from Dr. Hoffman and reviewed Plaintiff's Functional Capacity Evaluation ("FCE"), which was conducted on January 23, 2012. (Id.) The results of Plaintiff's 2012 FCE concluded that she could perform "light" physical demand category level work ("PDC") and showed that she could occasionally lift: twenty-five pounds twelve inches from floor to waist; twenty-five pounds from floor to waist; fifteen pounds from waist to shoulder; and fifteen pounds as well from waist to overhead. (Id.; see also A.R. 138.) Plaintiff could also bilaterally carry twenty-five pounds. (Id.) Dr. Hoffman concurred with these findings upon review. (Doc. 17, pp. 2–3; see also A.R. 113.) Thereafter, because Plaintiff's position as a Protective Services Office required Medium PDC work but she was found to only be capable of Light PDC work, Defendant determined Plaintiff was disabled within the meaning of the Policy and granted her LTD benefits. (Doc. 17, p. 3.) Defendant approved her claim with a disability onset date of June 25, 2011 and, after

accounting for the 180-day elimination period, began payments on December 22, 2011. (Id.) Plaintiff received benefits for the next thirty-six months. (Id.)

Per the terms of the Policy, Plaintiff's LTD benefits would be discontinued at the end of the thirty-six-month period if Defendant determined that Plaintiff was able to work at any gainful occupation on a part-time basis after December 2014. Accordingly, on November 5, 2015, Defendant began evaluating the status of Plaintiff's disability by asking Plaintiff's current treating physician, Dr. Gerald Chai, questions regarding her functional capacity. (Id.) Dr. Chai did not conduct an FCE but instead opined on Plaintiff's ability based on her most recent office visit, November 11, 2014.[6] (A.R. 563.) Dr. Chai reported that when Plaintiff presented on that day she had "severe" knee and elbow pain, but could continuously lift, carry, push, and pull ten pounds and occasionally do the same with eleven-to-twenty pounds. (Id. at p. 564.) Dr. Chai also reported that she could continuously sit but only occasionally stand, walk, reach, grasp, finger, stoop, or kneel. (Id.) Nonetheless, Dr. Chai concluded Plaintiff could return to work on December 22, 2014, in a job consistent with the limitations he reported. (Id.)

On January 8, 2015, a clinical nurse case manager reviewed Plaintiff's file for Defendant American General and concluded, in agreement with Drs. Hoffman and Chai, that Plaintiff was capable of Light PDC work activity. (Doc. 17, p. 4.) In addition, Defendant referred Plaintiff's file for an Employability Assessment/Occupational Review conducted by two vocational rehabilitation counselors who concluded that, although Plaintiff no longer had the physical capacity to be a Protective Services Officer, she was capable of performing Sedentary or Light work occupations. (Id.) Based on their findings, the reviewing counselors identified seven gainful occupations Plaintiff could perform that offered wages which met or exceeded Plaintiff's

---

[6] Previously, in records dates August 30, 2013, and May 13, 2014, Dr. Chai noted that he agreed with the findings of Plaintiff's 2012 FCE, which restricted Plaintiff to Light PDC work. (Doc. 17, pp. 3–4 & n.3; see also A.R. 386, 560.)

indexed monthly earnings. (Id.) On February 23, 2015, as a result of the information provided by Drs. Hoffman and Chai and the subsequent reviews by other experts as well as the 2012 FCE, Defendant denied Plaintiff's claim for continued LTD benefits. (Id.; see also A.R. 617–26.)

Plaintiff appealed this decision on May 7, 2015. (Doc. 17, p. 5.) With her appeal, Plaintiff enclosed a Medical Assessment of Ability to Do Work-Related Activities form which was prepared by Steven V. Bischof, D.O. in April 2015. (Id.) Dr. Bischof's assessment indicated that Plaintiff could never bend, squat, crawl, climb, or reach, and that she could not stand, sit, or walk for six to eight hours in a day, but Dr. Bischof also stated he had not seen Plaintiff as a patient since July 2, 2014. (A.R. 632–33.) In addition, Dr. Bischof commented that he was "not the patient's orthopedic physician, pain management physician, or physical therapist," that his assessment "was based on a single evaluation today," and that he had "[n]ot treated the patient in a long time for these medical problems." (Id. at p. 634.) Subsequently, Plaintiff submitted another Medical Assessment of Ability to Do Work-Related Activities form, this one prepared by Dr. Christopher J. Oldfield on May 27, 2015. (Doc. 17, p. 5; see also A.R. 639–41.) Although Dr. Oldfield's assessment form indicated similar functional limitations as those noted by Dr. Bischof, Dr. Oldfield left the majority of the form blank, including the sections for "Other Limitations," "Remarks," "Medical Basis," "Duration," and "Additional Comments." (Id.)

On August 25, 2015, Plaintiff supplemented her appeal with additional medical records and an FCE dated April 22, 2015. (Doc. 17, pp. 5–6; see also A.R. 644–78.) Among the medical records were several reports from Dr. Chai which agreed with Plaintiff's 2012 FCE finding that she had the ability to work at the Light PDC level.[7] (Doc. 17, pp. 5–6.) The two

---

[7] To be sure, Dr. Chai's April 23 and May 7, 2015 reports mention Plaintiff's 2015 FCE and state she should follow "[w]ork restrictions[ p]er her functional capacity evaluation," but they do not discuss this

most recent reports from Dr. Chai, dated June 9 and August 11, 2015, detailed treatment Plaintiff received for her knee and elbow pain but did not mention work restrictions. (Id. at n.6; see also A.R. 645, 647.)

Plaintiff's 2015 FCE, conducted by West Rehab at Work, found her capable of engaging in Sedentary PDC work. (Doc. 17, p. 6; see also A.R. 653–60.) The 2015 FCE also stated that Plaintiff exhibited "inconsistent effort" and declined several tests due to reported pain, causing the examiner to conclude that a Sedentary PDC evaluation "represents her participation in today's FCE, and not her potentially full capabilities." (A.R. 660.) Although the examiner, Jenna Gardner-Morgan, P.T., D.P.T., found Plaintiff capable of Sedentary PDC work, no final recommendation on returning to work was made because Plaintiff did not offer a formal job description for Dr. Gardner-Morgan to consider in light of the FCE. (Id.)

Finally, in addition to the supplemental records and FCE submitted by Plaintiff on appeal, Defendant commissioned an extensive peer review, by Dr. Allen Mirasol, of Plaintiff's disability file. (Doc. 17, p. 6; see also A.R. 682–83.) In his September 21, 2015 report, Dr. Mirasol found that Dr. Chai's objective examinations did not establish "any significant functional limitations" and that the 2015 FCE was not "a valid indicator of [Plaintiff's] physical demand level, as inconsistent effort was noted." (A.R. 685.) Similarly, Dr. Mirasol discounted Dr. Bischof's assessment of Plaintiff's ability to do work-related activities because it rested on a single day of evaluation and contained "significant discrepanc[ies]" from Dr. Chai's objective findings and the functional evaluations. (Id.) As to the 2012 FCE, Dr. Mirasol noted its "results support a return to modified [work] duty." (Id. at 684.) After comprehensively discussing

---

FCE vis-à-vis her 2012 FCE, which Dr. Chai had agreed with in his reports dated February 10, March 12, and April 9 of 2015. (See A.R. 651–52, 661, 664, 667–68.) Moreover, in each of these five reports, the language regarding Plaintiff's FCE and work restrictions is the same and lacks any discussion. (See id.)

Plaintiff's evidence of record, Dr. Mirasol concluded that "no specific [workplace] restrictions or limitations can be recommended." (Id. at p. 685.)

On October 12, 2015, Defendant American General denied Plaintiff Lord's appeal for continued LTD benefits. (Doc. 17, p. 7; see also A.R. 696–99.) In its denial letter, Defendant listed the material that had been reviewed (much of which is recounted above), provided the relevant Policy provisions, and explained the reasons for the claim denial. (Id.) Based on all the documents and information contained in Plaintiff's file taken as a whole, Defendant found that Plaintiff had the "ability to perform at the sedentary to light physical demand level and, while she may not be capable of performing her job for her former employer, she is qualified and capable of performing other gainful work." (A.R. 699.) Pursuant to the "*any gainful job* test" applicable to Plaintiff's claim, Defendant maintained its decision to deny Plaintiff continued LTD benefits. (Id. at pp. 698–99 (emphasis in original).) Plaintiff then commenced this ERISA action.

**STANDARD OF REVIEW**

Individuals who are "denied benefits under an employee benefit plan [may] challenge that denial in federal court," pursuant to Section 1132(a) of ERISA. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). However, summary judgment in an ERISA case differs somewhat from summary judgment review in other cases. Ruple v. Hartford Life & Accident Ins. Co., 340 F. App'x 604, 610 (11th Cir. 2009) (per curiam). Unlike summary judgment typically, in an ERISA benefits denial case the court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Prelutsky v. Greater Georgia Life Ins. Co., 692 F. App'x 969, 972 n. 4 (11th Cir. 2017) (per curiam) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17–18 (1st Cir.

2002)). In other words, the court "sits more as an appellate tribunal than as a trial court." Curran v. Kemper Mat. Servs., Inc., Case No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (per curiam) (citation omitted). Accordingly, where an ERISA plan vests the plan administrator with discretionary authority over claims decisions, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exits, do not apply." Jones v. Fed. Express Corp., 984 F. Supp. 2d 1271, 1275 (M.D. Fla. 2013) (citations omitted).

ERISA itself does not provide an applicable standard for courts to review challenges to the benefits decisions of plan administrators. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011) (per curiam) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)). As a result, the Eleventh Circuit Court of Appeals has "established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions," based on the United States Supreme Court's guidance in Firestone and Glenn. Id. Under this framework courts are to:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether [it] was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and [it] was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review [its] decision under the more deferential arbitrary and capricious standard).

9

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if [it] operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Id. at 1355 (citation omitted). In applying the framework, "[r]eview of the of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the it made its decision." Id. at 1354 (citing Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1140 (11th Cir. 1989)). For purposes of ERISA, the "arbitrary and capricious" standard is synonymous with an "abuse of discretion." See id. at 1355 n.5.

## DISCUSSION

As noted above, the Policy expressly grants Defendant American General the sole discretionary authority to determine claims. Accordingly, the Court assumes, without deciding, that Defendant's denial of continued LTD benefits was "*de novo* wrong" for purposes of this review and assess Defendant's denial decision under the more deferential arbitrary and capricious standard.

In her Complaint, Plaintiff alleges that Defendant wrongfully terminated her LTD benefits and wrongfully denied her claim for continued LTD benefits, because she is disabled and has been so since June 25, 2011. (Doc. 1-1, pp. 3–4.) Further, Plaintiff states that she has fully complied with her obligations under the Policy and has meet all conditions precedent for her LTD claim. (Id.) Defendant moves for summary judgment, arguing that American General's decision to deny Plaintiff continued LTD benefits was reasonable and should be upheld. (Doc. 17, pp. 12–14.) Defendant also contends that, under the ERISA review standard,

its conflict of interest is structural and common industry practice, and thus not sufficient to render the denial of Plaintiff's LTD claim unreasonable. (Id. at pp. 14–16.)

In response, Plaintiff asserts that Defendant unreasonably denied her claim for continued LTD benefits because American General failed to properly consider "recent and significant medical evidence" showing her disabled. (Doc. 22, pp. 9–12.) Plaintiff also argues Defendant improperly relied on the Social Security Administration's determination that she did not qualify for public disability benefits; however, Plaintiff does not address whether American General operated under a conflict of interest. (See id.) Defendant counters, in its Reply, that American General did not rely upon the Social Security Administration's decision when it denied Plaintiff continued LTD benefits and that American General's decision was reasonable as it considered all of the relevant medical evidence of record. (Doc. 26, pp. 9–12.)

Under the arbitrary and capricious standard of review, applicable to this ERISA appeal, the Court finds that Defendant had reasonable grounds to support its denial, and thus, grants its Motion for Summary Judgment.

**I.    Defendant American General's Motion for Summary Judgment (Doc. 17)**

    **A.    Defendant's Denial Was Not Arbitrary and Capricious**

Defendant in this case is vested with "sole discretion authority" in reviewing claims for LTD benefits, (A.R. 1071), which subjects its decision to arbitrary and capricious review by the Court. "Under the arbitrary and capricious standard of review, the court seeks 'to determine whether there was a reasonable basis for the [administrator's] decision, based upon the facts as known to the administrator at the time the decision was made.'" Townsend v. Delta Family-Care Disability and Survivorship Plan, 295 F. App'x 971, 976 (11th Cir. 2008) (per curiam) (quoting Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 912 (11th Cir. 1997). A reasonable basis

"requires [the] articulation of a rational connection between the facts found and the choice made" and rests on such evidence that "a reasonable person would accept as adequate to support a conclusion." Nebesny-Fender v. Am. Airlines, Inc., 818 F. Supp. 2d 1319, 1332 (S.D. Fla. 2011) (citations and internal quotations omitted). Based on the record before the administrator, the Court concludes that Defendant possessed a reasonable basis for the denial of LTD benefits.

Plaintiff's contention that American General abused its discretion when denying her claim for continued LTD benefits proceeds on two fronts, failure to adequately consider more recent medical evidence and improper consideration of her Social Security disability denial. However, Plaintiff provides no evidence, or record citation, that Defendant took into account her Social Security denial. (See Doc. 22, p. 9.) This is because Defendant did *not* at all rely on the Social Security Administration's decision when it denied her claim for continued LTD benefits. (See A.R. 696–99.) The decision of the Social Security Administration is neither listed in the materials considered section of Defendant's denial letter nor is it discussed in the explanation of benefits. (Id.) Moreover, although Plaintiff failed to offer support for this contention, the Court has nonetheless scoured the record for *any* evidence that American General based its denial in part on the Social Security Administration's decision and found none. Accordingly, Plaintiff's argument in this regard is without merit.[8]

As to whether Defendant unreasonably failed to adequately consider more recent medical evidence, Plaintiff points to the 2015 FCE, Dr. Chai's February 10, 2015 report, and Dr. Bischof's evaluation. (Doc. 22, pp. 7–9.) However, Defendant's denial letter accounts for each

---

[8] Furthermore, even if Defendant had considered the Social Security Administration's denial, it would have been permissible because this type of evidence is relevant to ERISA claims. See Oates v. Walgreens Co., 573 F. App'x 897, 910 (11th Cir. 2014) (per curiam) (noting that courts may consider the Social Security Administration's determination of disability when reviewing a plan administrator's decision); Kirwan v. Marriott Corp., 10 F.3d 784, 790 n. 32 (11th Cir. 1994) ("A district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits.").

of these records. (See A.R. 697–98.) As to Plaintiff's 2015 FCE, Defendant correctly found that it "supports Ms. Lord's sedentary to light work capacity," because it indeed determined that Plaintiff was capable of sedentary work. (A.R. 660, 698.) An accurate recounting and contemplation of Plaintiff's 2015 FCE—which actually supports Defendant's denial per the Policy because it found Plaintiff capable of sedentary work[9]—is hardly the type of decision-making that could be characterized as arbitrary and capricious.

Similarly, Defendant expressly discussed Dr. Bischof's evaluation and his opinion that Plaintiff "had significantly less functional capacity that was demonstrated by the [2012] FCE and other provider opinions." (A.R. 698.) Defendant discounted Dr. Bischof's opinion both because it conflicted with other medical evidence of record and because he qualified his own conclusions based his lack of recent and frequent contact with Plaintiff. (Id. (Dr. Bischoff "had not seen Ms. Lord since 7/2/2014 and had been unable to observe her over time and . . . based his opinion of the single evaluation date of 4/28/2015.").) Plaintiff may have desired that Defendant gave more weight to Dr. Bischof's assessment form, but the reasons stated by Defendant to discount Dr. Bischof were more than reasonable. See Townsend, 295 F. App'x at 977 ("[A] plan administrator is entitled to weigh the evidence and resolve conflicting evidence about the claimant's disability."); Manning v. Johnson & Johnson Pension Committee, 504 F. Supp. 2d 1293, 1305 (M.D. Fla.) (finding that defendants relied on the consistent opinions of four medical providers that the plaintiff could perform sedentary work; and thus, "even assuming *arguendo* that [the defendants] were 'wrong' to discontinue [the plaintiff's] benefits, this court cannot hold that decision was unreasonable or arbitrary and capricious").

---

[9] Recall that Plaintiff must be unable to perform *any* gainful occupation on a *part-time basis* in order to receive continued LTD benefits. (A.R. 1033.)

13

Finally, although Defendant did not specifically discuss Dr. Chai's February 10, 2015 report in its decision letter, it did mention a more recent report from April 23, 2015. (A.R. 698.) "As of 4/23/2015, Dr. Chai documented Ms. Lord's chronic knee pain, but asserted that her work restrictions were 'per functional capacity evaluation.' The April 201[5] FCE documented Ms. Lord's ability to perform sedentary work, but additionally confirmed that . . . the sedentary work capacity was not necessarily her potentially full capabilities." (Id.) Moreover, the February 10, 2015 report contains no information that would render Defendant's denial arbitrary and capricious. For work restrictions, this report notes that Plaintiff should proceed "[p]er functional capacity evaluation," (id. at p. 609), and the only FCE of record at that time was Plaintiff's 2012 FCE which found her capable of light work, (doc. 17, pp. 5–6). Accordingly, because Dr. Chai's medical records agree that Plaintiff can engage in at least sedentary work, Defendant's consideration of them in denying Plaintiff's LTD claim was not arbitrary and capricious.

Furthermore, there was sufficient medical evidence to support Defendant's decision. First, both the 2012 and 2015 FCE's found Plaintiff capable of working at some capacity, either at the sedentary or light work levels, both of which render her LTD claim subject to denial. (See A.R. 697–98.) Second, Dr. Chai's medical reports never found Plaintiff disabled such that she was incapable of performing any gainful occupation; on the contrary, his findings supported both of Plaintiff's FCE's. (See A.R. 644–78.) Third, Defendant employed both a clinical nurse case manager and vocational rehabilitation counselors to review Plaintiff's file, and these experts independently concluded that Plaintiff could perform sedentary or light work. (Doc. 17, p. 4.) Lastly, following Plaintiff's supplementation of her LTD claim record, Defendant commissioned a peer review, by Dr. Mirasol, of her file "to assess if there was any support for [work] restrictions or limitations so that [it could] compare any documented impairment to the Policy

requirements for disability." (A.R. 698.)  In his review, Dr. Mirasol concluded that Plaintiff's condition, and the medication she takes for it, did not require further workplace restrictions. (See id. at p. 685.)  This evidence, taken together, provides a more than reasonable basis for the denial of Plaintiff's claim for continued LTD benefits.

The main case Plaintiff cites to show Defendant abused its discretion, or was arbitrary and capricious, when it denied her claim—Madison v. Greater Georgia Life Insurance Co., 225 F. Supp. 3d 1381 (N.D. Ga. 2016)—does not alter this conclusion. (Doc. 22, pp. 7–9.)  In Madison, the court found an abuse of discretion where the administrator engaged in "'a selective review of the evidence and reli[ed] on a cold record file by a non-examining doctor, to the exclusion of plainly relevant and reliable clinical evidence like [the plaintiff's] FCE.'" Id. at 1400 (citation omitted)).  Here, Defendant did not cherry pick or exclude any relevant evidence. As discussed above, American General considered each piece of evidence Plaintiff argues was not accounted for, including the 2015 FCE.  Moreover, that FCE showed Plaintiff could perform at least sedentary work, as did all available evidence except for Drs. Bischof and Oldfield's assessment forms, which Defendant considered and reasonably discounted. (See A.R. 698.) Thus, unlike Madison, Defendant did not ignore any FCE or engage in a selective review of the evidence.

Plaintiff also cites Kinser v. Plans Administration Committee of Citigroup Inc., 488 F. Supp. 2d 1369 (M.D. Ga. 2007) for her contention that Defendant acted arbitrarily and capriciously in denying her claim for continued LTD benefits. (Doc. 22, pp. 10–11.)  That case too is inapposite from the case at hand.  The court in Kisner reversed an administrator's decision based on a failure to consider the entire record.  488 F. Supp. 2d at 1382–83 (finding that the administrator "focus[ed] exclusively" on a single day of treating physician's notes and the

opinion of an independent consultant). The record in this case makes clear that Defendant did not conduct that type of cursory review when reviewing Ms. Lord's claim. Indeed, comparison of the scant and selective reviews conducted by the administrators in Kisner and Madison only underscores the comprehensiveness of Defendant's review of Plaintiff's claim. While Plaintiff may not like the outcome of that review, she cannot credibly dispute the scope of the materials Defendant assessed.

For all of these reasons, the Court finds that Defendant had a reasonable basis to deny Plaintiff continued LTD benefits such that its decision was not arbitrary and capricious.

### B. Plaintiff Fails to Show Defendant's Conflict Rendered its Denial Unreasonable

Generally, upon concluding that reasonable grounds support Defendant's LTD decision, the Court would evaluate whether a conflict of interest influenced that decision. As the Eleventh Circuit has stated, "[a] pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds." Blankenship, 644 F.3d at 1355. Even if a conflict of interest exists, it is "'a factor' in the analysis: but the basic analysis still centers on assessing whether a reasonable basis existed for the administrator's benefits decision." Id. (citing Conkright v. Frommert, 559 U.S. 506, 520 (2010)). Ultimately, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." Doyle v. Liberty Life Assur. Co. of Bos., 542 F.3d 1352, 1360 (11th Cir. 2008).

In this case, Plaintiff has proffered no evidence, or argument, that Defendant's decision was colored by a conflict of interest. (See Doc. 22.) Plaintiff has not alleged, in her Response to Defendant's Motion, that American General's decision was arbitrary and capricious due to a conflict of interest. (Id.; see also doc. 26, p. 11.) Furthermore, Plaintiff's Complaint contained

no allegation that a conflict of interest made Defendant's decision arbitrary and capricious. (See Doc. 1-1.) For its part, Defendant argues that any conflict "is a structural one" arising out of its dual role as claims administrator and benefits payor. "The presence of a structural conflict of interest—an unremarkable fact in today's marketplace—constitutes no license, in itself, for a court to overturn an otherwise reasonable benefits decision." Prelutsky, 692 F. App'x at 974 (citation and internal quotations omitted). Accordingly, the Court concludes that even if such a conflict exists, it is merely structural. Even taking this conflict of interest into consideration, Plaintiff has not carried her burden of showing that the decision to deny her claim was arbitrary and capricious. She has not shown that Defendant's conflict was "anything other than standard industry practice. Neither has [she] shown that [defendant's] decision was in any way tainted by self-interest." Id. at 975 (citations and internal quotations omitted).

## II. Plaintiff's Amended First Motion for Leave to File Amended Complaint and Amended Response to Summary Judgment (Doc. 31)[10]

Plaintiff seeks leave to amend her Complaint to add two relevant developments that "have transpired since" she filed her Complaint: On March 29, 2018, Plaintiff's injuries were determined to be, and were accepted as, catastrophic by the Ports Authority; and on September 13, 2018, Plaintiff was awarded Social Security Disability Benefits with an onset date of January 1, 2015. (Doc. 31, p. 4.) Defendant opposes, arguing that Plaintiff's proposed amendments are futile under ERISA. (Doc. 30, p. 2.) The Court agrees.

Federal Rule of Civil Procedure 15(a) provides that a party "may amend its pleading once as a matter of course" either within twenty-one days after serving it or within twenty-one days after service of a required responsive pleading or motion. Once this time has passed, a party "may amend its pleading only with the opposing party's written consent or the court's leave,"

---

[10] (See also Docs. 28, 29 (Plaintiffs first Motion to Amend and the Clerk of Court's Notice of Filing Deficiency.)

which courts "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" In re Engle Cases, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182, (1962)). While leave to amend is generally freely given, it is by no means guaranteed. A court should not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Id. at 1108–09 (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)). Whether to grant leave is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981).

As previously stated, courts reviewing an administrator's benefits denial under ERISA are limited "to consideration of the material available to the administrator at the time it made its decision." Blankenship, 644 F.3d at 1354 (citation omitted); see also Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008) ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard . . . the function of the court is to determine whether there was a reasonable basis for the decision, *based upon the facts as known to the administrator at the time the decision was made*." (emphasis added)). Plaintiff seeks to amend her Complaint to add developments that occurred well past Defendant's denial decision, and which necessarily comprise facts not known to American General when it denied Plaintiff's claim for continued LTD benefits in October 2015. Under ERISA, such facts are irrelevant because they were not available for Defendant's consideration when it made its denial

decision.[11]  Therefore, Plaintiff's proposed amendments are futile.  Consequently, the Court **DENIES** Plaintiff's Motion for Leave to Amend, (doc. 31).[12]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment, (doc. 17), and **DENIES** Plaintiff's Amended First Motion for Leave to File Amended Complaint and Amended Response to Summary Judgment, (doc. 31).  The Court **DIRECTS** the Clerk of Court to enter summary judgment in favor of Defendant and to **CLOSE** this case.

**SO ORDERED**, this 18th day of March, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[11] Moreover, even if the Court allowed Plaintiff to amend her Complaint to include these developments, that amendment would not alter the Court's finding regarding the reasonableness of Defendant's denial of Plaintiff's claim.  While the Court may consider an award of social security disability benefits in an ERISA case, such an award is not dispositive as a claim for Social Security benefits and a claim under an ERISA policy involve substantially different inquiries.  Manning, 504 F. Supp. 2d at 1305, n. 9 (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003); Pari–Fasano v. ITT Hartford Life and Acc. Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000)).  Further, the Ports Authority's determination of the catastrophic nature of Plaintiff's injury would have little if any bearing on Plaintiff's eligibility for LTD benefits under the Policy.

[12] For this reason, the Court also **DENIES** Plaintiff's First Motion for Leave to File Amended Complaint and Amended Response to Summary Judgment.  (Doc. 28.)